SUPERIOR HOTELS, LLC v MACKINAW TOWNSHIP

Docket No. 276836. Submitted August 6, 2008, at Lansing. Decided
    March 10, 2009, at 9:00 a.m. Leave to appeal sought.

Mackinaw Township petitioned the State Tax Commission (STC) for
    a correction of the taxable value of commercial real estate owned
    by Superior Hotels, LLC, for the tax years 2001 through 2003. The
    township alleged that the valuation for that period was incorrect
    because its former assessor had originally established the taxable
    value when a motel was being built on the property and it was only
    half completed and the assessor had thereafter failed to change the
    value to reflect that the motel had been completed. The STC
    entered an order that increased the taxable value for the tax years
    involved to correct the assessor's error in calculating the taxable
    value. Superior Hotels sought relief from the STC's order in the
    Tax Tribunal, which ruled that the STC lacked jurisdiction to
    correct the error because the township had failed to show that the
    subject property was "incorrectly reported or omitted" within the
    meaning of MCL 211.154, which, according to the Tax Tribunal,
    permitted assessments to be corrected only if a property's status
    was misrepresented, such as when a taxpayer incorrectly claimed
    that the property was tax-exempt. The Tax Tribunal determined
    that § 154 does not confer jurisdiction on the STC to correct the
    assessor's error in mistakenly undervaluing the property because
    it does not apply to property conceded to be taxable but alleged to
    be improperly assessed. The Tax Tribunal further ruled that even
    if the assessor's error were to be considered a clerical error
    correctable under MCL 211.53b, the township's failure to appear
    before the board of review prevented such action and also deprived
    the Tax Tribunal of jurisdiction to correct the assessor's error. The
    township appealed the Tax Tribunal's judgment reinstating the
    original taxable values.

The Court of Appeals held:

The Tax Tribunal erred as a matter of law by ruling that the
STC lacked jurisdiction under § 154 to issue an order correcting
the taxable value for the subject property for the pertinent tax
years. The Tax Tribunal also erred as a matter of law by reaching

a legal conclusion from the stipulated facts that this case did not implicate the omission of taxable property within the meaning of § 154.

1. The administrative jurisdiction of the STC available under § 154 to correct the incorrectly reported or omitted assessment value of property subject to taxation fits harmoniously with the appellate jurisdiction of the Tax Tribunal to review the STC's final agency determination or order under § 154.

2. Section 154 only applies when the incorrect assessment was based on incorrect reporting or an omission.

3. "Assessment value," as used in § 154, means either "taxable value" or 50 percent of the true cash value of property subject to taxation as those terms are defined in this state's constitution and statutes.

4. The township's assessor erred in calculating the taxable value of the subject property for the 1999 tax year (December 31, 1998, assessment date) by failing to include "new construction" that was an "addition" under MCL 211.27a(2)(a) and MCL 211.34d(1)(b)(*iii*). When the property was assessed for the 2000 tax year, what was "new construction" in 1999 came within the definition of "omitted real property" under § 34d(1)(b)(*i*). The "new construction" completed in 1998 but not included in the determination of the 1999 taxable value became "omitted real property" as of the 2000 assessment date and dates thereafter because it was "previously existing tangible real property not included in the assessment" under § 34d(1)(b)(*i*).

5. The stipulated facts establish that the assessor's error in calculating taxable value under MCL 211.27a(2) occurred because the assessor failed to add the new construction in the year it was finished. In the following years, this initial error resulted in the omission of taxable property from taxable value within the meaning of § 154.

6. The reasoning in *Detroit v Norman Allan & Co*, 107 Mich App 186 (1981), on which the Tax Tribunal and Superior Hotels relied for the proposition that the STC's jurisdiction under § 154 is limited to circumstances where the status of property as either taxable or exempt has been incorrectly reported or omitted, is not reliable precedent or authority for interpreting § 154 because the statutory language on which the *Norman Allan* Court based its reasoning was removed following the decision.

Tax Tribunal judgment reversed; State Tax Commission order reinstated.

1. TAXATION — WORDS AND PHRASES — ASSESSMENT VALUE FOR PROPERTY TAX PURPOSES.

> The term "assessment value," as used in MCL 211.154, means either "taxable value" or 50 percent of the true cash value of property subject to taxation.

2. TAXATION — STATE TAX COMMISSION — ASSESSMENT VALUE FOR PROPERTY TAX PURPOSES — CORRECTION OF ASSESSMENT VALUES — APPEAL — TAX TRIBUNAL.

> The State Tax Commission may place a corrected assessment value for the appropriate years on the appropriate assessment roll when the commission determines that property subject to taxation under certain statutes has been incorrectly reported or omitted for any previous year, but the correction is limited to the current assessment year and two years immediately preceding the date the incorrect reporting or omission was discovered and disclosed to the commission; a person against whom such an assessment is made may appeal the commission's order to the Tax Tribunal (MCL 211.154[1], [7]).

*Foster, Swift, Collins & Smith, P.C.* (by *Steven H. Lasher* and *Pamela C. Dausman*), for Superior Hotels, LLC.

*MacArthur Law Firm* (by *Timothy P. MacArthur*) for Mackinaw Township.

Amicus Curiae:

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Steven B. Flancher*, Assistant Attorney General, for the State Tax Commission.

Before: MARKEY, P.J., and WHITBECK and GLEICHER, JJ.

PER CURIAM. Respondent appeals by right the Michigan Tax Tribunal's ruling that the State Tax Commission (STC) lacked jurisdiction under MCL 211.154 to correct the taxable value of petitioner's commercial real estate for the tax years 2001 through 2003. The error arose over a two-year period when petitioner was building a motel on the subject property. During that time

respondent's former assessor continued to calculate the property's taxable value on the basis of the taxable value of the motel established when it was only half completed, which was adjusted annually for inflation as permitted by MCL 211.27a. The STC entered an order in response to respondent's petition under § 154 to correct the taxable value of the property for tax year 2001 from $841,604 to $1,622,420, for tax year 2002 from $868,535 to $1,674,338, and for tax year 2003 from $881,563 to $1,699,453. Petitioner sought relief from the STC's order in the Tax Tribunal, which ruled that the STC lacked jurisdiction to correct an assessor's error in calculating taxable value because respondent had failed to show that the subject property was "incorrectly reported or omitted" within the meaning of § 154. We hold that because the Tax Tribunal erred as a matter of law, its judgment must be reversed.

## I. SUMMARY OF FACTS AND PROCEEDINGS

The parties submitted this dispute to the Tax Tribunal on stipulated facts. The most pertinent are:

7. Superior Hotels began construction of a motel known as a "Baymont Inn" on the property in 1997 and completed construction of the hotel in 1998.

8. The Township assessed the subject property as 50% complete on December 31, 1997 and calculated the 1998 assessed value and taxable value accordingly.

9. For the 1999 tax year (December 31, 1998 assessment date), the Township assessed the subject property as 100% complete, but calculated the 1999 taxable value by applying the applicable inflation rate to the 1998 taxable value which 1998 taxable value was based on a 50% completion calculation.

10. The Township assessed the subject property as 100% complete for the 1999 tax year and such assessment was reflected on the assessment roll.

11. No portion of the subject property was "omitted" from assessment by the Township.

\* \* \*

15. The Township filed Michigan Department of Treasury Form L-4154, Assessor or Equalization Director's Notice of Property Incorrectly Reported or Omitted from Assessment Roll (copy attached as Exhibit A) with the State Tax Commission alleging an error made by the Township in calculating the 2001, 2002 and 2003 taxable values for the subject property.

16. On March 7, 2005, Superior Hotels appeared before the State Tax Commission.

17. The State Tax Commission accepted the Section 154 petition filed by the Township and increased the 2001, 2002 and 2003 taxable values of the subject property as requested by the Township.

At issue in this case is MCL 211.154, the critical first sentence of which provides:

If the state tax commission determines that property subject to the collection of taxes under this act[1] . . . has been *incorrectly reported or omitted* for any previous year, but not to exceed the current assessment year and 2 years immediately preceding the date the incorrect reporting or omission was discovered and disclosed to the state tax commission, the state tax commission shall place *the corrected assessment value* for the appropriate years on the appropriate assessment roll. [Emphasis added.]

---

[1] The act referred to is the General Property Tax Act, MCL 211.1 *et seq.* Section 154 also includes property subject to taxation under 1974 PA 198, MCL 207.551 to 207.572 (relating to industrial development districts), 1905 PA 282, MCL 207.1 to 207.21 (property of public utilities), 1953 PA 189, MCL 211.181 to 211.182 (lessees of tax-exempt property), and property taxed under the Commercial Redevelopment Act, 1978 PA 255, MCL 207.651 to 207.668.

The Tax Tribunal first noted that the Legislature did not define the statutory terms "incorrectly reported" or "omitted," so it was permitted to construe those terms to determine whether the STC had jurisdiction under § 154. To ascertain the meaning of the term "incorrectly report," the Tax Tribunal relied primarily on *Detroit v Norman Allan & Co*, 107 Mich App 186; 309 NW2d 198 (1981), and *Eagle Glen Golf Course v Surrey Twp*, unpublished opinion per curiam of the Court of Appeals, issued April 19, 2002 (Docket No. 224810), one of several unpublished cases of this Court that have followed *Norman Allan*. Quoting from *Eagle Glen, supra* at 2, the Tax Tribunal opined that § 154 "permitted 'assessments to be corrected only if a property's status is misrepresented, such as when a taxpayer incorrectly claimed that the property was tax-exempt.' " *Superior Hotels, LLC v Mackinaw Twp*, 16 MTTR 119 (Docket No. 313228, February 23, 2007), at 123. The Tax Tribunal then reasoned on the basis of the stipulated facts, ¶ 11 and ¶ 15 in particular, that "neither the status of the property [as exempt or taxable] nor a purported omission was at issue." *Id.* at 123. Specifically, the Tax Tribunal ruled that respondent had conceded in ¶ 11 of the stipulated facts that there was no issue concerning "omitted" property in the present case. *Id.* Thus, the Tax Tribunal concluded that "[r]espondent's own stipulations of fact dictate that MCL 211.154 is not applicable to this matter." *Superior Hotels, supra* at 123.

In reaching its conclusion that § 154 did not confer jurisdiction on the STC in this case, the Tax Tribunal also relied on dicta in *Centre Mgt v City of Ferndale*, unpublished opinion per curiam of the Court of Appeals, issued August 10, 2004 (Docket No. 248266). The Tax Tribunal, quoting *Centre Mgt, supra* at 2, opined, " 'MCL 211.154 did not confer jurisdiction on the STC

to correct an assessor's error in mistakenly undervaluing the property in previous years because MCL 211.154 does not apply to property conceded to be taxable but alleged to be improperly assessed.' "[2] *Superior Hotels, supra* at 123. In addition, the Tax Tribunal quoted its own prior decision in *Michigan Basic Prop Ins v State Tax Comm*, 15 MTTR 423 (Docket No. 296251, March 13, 2006), at 429, which in turn quoted *Eagle Glen, supra* at 3, stating " 'MCL 211.154 does not "confer jurisdiction on the state tax commission to correct an assessor's error in mistakenly undervaluing the property, because MCL 211.154 does not apply to property conceded to be taxable but alleged to be improperly assessed." ' " *Superior Hotels, supra* at 123-124. On the basis of this authority, the Tax Tribunal ruled that § 154 does not grant jurisdiction to the STC "to correct an assessor's undervaluing the property for previous years." *Id.* at 124.

The Tax Tribunal further ruled that respondent's error in calculating the subject property's taxable value might arguably have been considered "a clerical error or a mutual mistake of fact relative to the correct assessment figures, the rate of taxation, or the mathematical computation relating to the assessing of taxes," correctible under MCL 211.53b. But the Tax Tribunal opined that respondent's failure to appear before the board of review was fatal to correcting the assessor's error in calculating taxable value under that

---

[2] *Centre Mgt, supra,* relied for this dictum on *Norman Allan, supra,* and *Gen Motors Corp v State Tax Comm*, 200 Mich App 117; 504 NW2d 10 (1993). The latter case held that the STC could employ the services of an accounting firm in a § 154 proceeding regarding alleged underreporting of taxable personal property. The Court cited *Norman Allan* for the proposition that "MCL 211.154 . . . applies where the issue is whether property thought to be taxable has been incorrectly reported or omitted." *Gen Motors Corp, supra* at 120.

section. *Superior Hotels, supra* at 124. This same defect, the Tax Tribunal ruled, also deprived it of jurisdiction to correct the assessor's error in calculating taxable value. *Id.*, citing MCL 205.735.

Accordingly, the Tax Tribunal entered judgment for petitioner, reinstating the original taxable values for the subject property for the tax years 2001 to 2003. *Superior Hotels, supra* at 124-125. Respondent appeals by right.

## II. STANDARD OF REVIEW

Our review of the Tax Tribunal's decision is limited. *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007). "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, § 28. Factual findings of the Tax Tribunal are final if they are supported by competent, material, and substantial evidence on the whole record. *Id.*; *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 482; 473 NW2d 636 (1991). Thus, as here, where the facts are not disputed and fraud is not alleged, our review is limited to whether the Tax Tribunal made an error of law or adopted the wrong legal principles. *Id.* at 482-483. The issue in this case presents a question of statutory interpretation, which this Court reviews de novo. *Wexford Med Group v Cadillac*, 474 Mich 192, 202; 713 NW2d 734 (2006).

The primary goal of construing a statute is to determine and give effect to the intent of the Legislature. *Mt Pleasant, supra* at 53. The first step in doing this is to review the language of the statute. *United Parcel Service, Inc v Bureau of Safety & Regulation*, 277 Mich App

192, 202; 745 NW2d 125 (2007). "If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute and judicial construction is not permissible." *Mt Pleasant, supra* at 53. A statutory provision "is ambiguous only if it 'irreconcilably conflict[s]' with another provision or when it is *equally* susceptible to more than a single meaning." *Lansing Mayor v Pub Service Comm*, 470 Mich 154, 166; 680 NW2d 840 (2004) (citation omitted and emphasis in original).

In reading a statute, this Court must assign to every word or phrase its plain and ordinary meaning unless the Legislature has provided specific definitions or has used technical words or phrases that have acquired a peculiar and appropriate meaning in the law. MCL 8.3a; *Ford Motor Co v Woodhaven*, 475 Mich 425, 439; 716 NW2d 247 (2006). Also, we must not read statutory words or phrases in isolation; rather, we must read each word or phrase and its placement in the context of the whole act. *Lansing Mayor, supra* at 167-168. Thus, we must consider "both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.' " *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (citation omitted).

We also note that " 'the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons.' " *In re Complaint of Rovas Against SBC Michigan*, 482 Mich 90, 103; 754 NW2d 259 (2008), quoting and adopting the standard quoted in *Boyer-Campbell Co v Fry*, 271 Mich 282, 296; 260 NW 165 (1935) (citation and quotation marks omitted). In this regard, the Legislature has granted the STC general supervisory authority over the

assessment of property for taxation as provided in Const 1963, art 9, § 3, and legislation implementing that constitutional provision. See MCL 211.150. Clearly, the STC believes that § 154 grants it jurisdiction to correct the assessor's error in calculating taxable value in this case and supports this position in an amicus curiae brief. We accord respectful consideration to the STC's position. Nevertheless, "the agency's interpretation is not binding on the courts, and it cannot conflict with the Legislature's intent as expressed in the language of the statute at issue." *In re Complaint of Rovas*, *supra* at 103.

### III. ANALYSIS

We begin our analysis of § 154 by reading it both as a whole and as part of the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, to determine the Legislature's overall purpose. We conclude that in § 154 the Legislature has conferred administrative jurisdiction on the STC to correct erroneous property tax assessments in specific limited circumstances. Specifically, the STC may correct an "assessment value" that results in an "assessment change." MCL 211.154(1). An "assessment change" under § 154 may result "in increased property taxes," MCL 211.154(2), or might "result[] in a decreased tax liability," MCL 211.154(6). That the STC's administrative jurisdiction under § 154 to correct erroneous property tax assessments is not precluded by the appellate jurisdiction of the Tax Tribunal is manifested by the Legislature's extension of jurisdiction to correct assessment values "for any previous year, but not to exceed the current assessment year and 2 years immediately preceding the date the incorrect reporting or omission was discovered and disclosed to the state tax commission." MCL 211.154(1). This time frame is well

beyond the limited time to appeal an assessment dispute to the Tax Tribunal, which, in general, must also be contemporaneously protested before the board of review. See MCL 205.735 and MCL 205.735a.[3] Moreover, subsection 7 of § 154 clearly provides that after a final decision by the STC in a § 154 proceeding, the appellate jurisdiction of the Tax Tribunal may be invoked, as in this case: "A person to whom property is assessed pursuant to this section may appeal the state tax commission order to the Michigan tax tribunal." MCL 211.154(7).

The Legislature originally added subsection 7 to § 154 when 1982 PA 539 added it as subsection 4, which provided: "A person to whom property is assessed pursuant to this section may appeal the state tax commission determinations to the Michigan tax tribunal." This amendment of § 154 was a clear legislative rejection of *Detroit v Jones & Laughlin Steel Corp*, 77 Mich App 465, 476; 258 NW2d 521 (1977), which held that proceedings under § 154 are appellate in nature and must be first brought in the Tax Tribunal. This Court in *Norman Allan, supra* at 191, followed *Jones & Laughlin Steel*. As discussed more fully later in this opinion, 1982 PA 539 also seriously undermined the *Norman Allan* decision in several other respects.

Our reading of § 154 is consistent with the legislative scheme regarding both the Tax Tribunal and the STC. The Tax Tribunal is a "quasi-judicial agency," MCL 205.721, that is granted "exclusive and original jurisdiction" of "proceeding[s] for direct review of a final

---

[3] MCL 205.735a supersedes MCL 205.735 for appeals to the Tax Tribunal after December 31, 2006. In general, MCL 205.735a permits owners of property classified as commercial or other business use to bypass the board of review and appeal directly to the Tax Tribunal. See 2006 PA 174.

decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under property tax laws," MCL 205.731(a). "A 'proceeding' is defined as an 'appeal' in MCL 205.703 . . . ." *Wikman v City of Novi*, 413 Mich 617, 631; 322 NW2d 103 (1982). Thus, pertinent to this case, the Tax Tribunal is a quasi-judicial agency having exclusive and original jurisdiction over *final* agency decisions "relating to assessment" and "valuation . . . under property tax laws." MCL 205.731(a). Having entered an order correcting the taxable value of petitioner's property, the STC is an "agency" as defined in MCL 205.703(a), i.e., "a board, official, or administrative agency who is empowered to make a decision, finding, ruling, assessment, determination, or order that is subject to review under the jurisdiction of the tribunal or who has collected a tax for which refund is claimed."[4] The Tax Tribunal is vested with "jurisdiction over matters previously heard by the State Tax Commission *as an appellate body.*" *Jefferson Schools v Detroit Edison Co*, 154 Mich App 390, 398; 397 NW2d 320 (1986) (emphasis in original), citing MCL 205.741 and *Emmet Co v State Tax Comm*, 397 Mich 550, 555; 244 NW2d 909 (1976).

On the other hand, as already noted, the Legislature in MCL 211.150 has granted the STC general supervisory authority over the assessment of property for taxation. The Legislature has specifically conferred on the STC the authority "[t]o receive all complaints as to property liable to taxation that has not been assessed or that has been fraudulently or improperly assessed, and to investigate the same, and to take such proceedings as will correct the irregularity complained of, if any is

---

[4] 2008 PA 125 amended MCL 205.703(a) without changing its substance.

found to exist." MCL 211.150(3). This authority implicates the administrative, rather than the appellate, jurisdiction of the STC. See *Jefferson Schools, supra* at 398-399. Thus, the administrative jurisdiction of the STC available under § 154 to correct the "assessment value" of "property subject to the collection of taxes" that "has been incorrectly reported or omitted" dovetails harmoniously with the appellate jurisdiction of the Tax Tribunal to review the STC's final agency determination or order under § 154. MCL 211.154(7).

The first sentence of § 154 establishes the limited circumstances to which it applies. There must be an "assessment value" that needs to be corrected as a result of taxable property having been "incorrectly reported or omitted . . . ." We agree with the Tax Tribunal's observation in *SSAB Hardtech, Inc v State Tax Comm*, 13 MTTR 164 (Docket No. 288672, March 30, 2004), at 174: "It is reasonable to conclude that section 154 only applies when the assessment *was based upon* the incorrect reporting" or omission. (Emphasis in original.) We also conclude that "assessment value" as used in § 154 means either "taxable value" or 50 percent of the true cash value of property subject to taxation as those terms are defined in the Michigan Constitution and statutes.

When the Legislature does not provide definitions, courts may consult a dictionary. *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004) ("Undefined statutory terms must be given their plain and ordinary meanings, and it is proper to consult a dictionary for definitions."). The *Random House Webster's College Dictionary* (1992) provides three definitions for the word "assessment." It may mean (1) "the act of assessing; appraisal; evaluation," (2) "an official valuation of property, used as a basis for levying a tax," or (3) "an

amount assessed as payable." Because the word "assessment" in § 154 is coupled with the word "value" in the context of property subject to taxation, the second definition is the most pertinent. "For the purpose of collecting *ad valorem* taxes, or taxes based on the value of property, the word 'assessment' means the determination of the value of property for tax purposes . . . ." *Wikman, supra* at 632. See also MCL 211.10(1): "An assessment of all the property in the state liable to taxation shall be made annually in all townships, villages, and cities by the applicable assessing officer as provided in section 3 of article IX of the state constitution of 1963 and section 27a." The cited constitutional and statutory provisions split Michigan property tax assessments into "taxable value" and 50 percent of true cash value, so "assessment value" must include both.

In 1994, Michigan voters approved Proposal A, "which amended article 9, § 3 of the Michigan Constitution." *Toll Northville Ltd v Northville Twp*, 480 Mich 6, 11; 743 NW2d 902 (2008). As amended, Const 1963, art 9, § 3, provides, in part:

> The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred. When ownership of the parcel of property is trans-

ferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value.

The purpose of Proposal A, as explained by our Supreme Court, was

> "to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount that the 'taxable value' of the property may increase each year, even if the 'true cash value,' that is, the actual market value, of the property rises at a greater rate. However, a qualification is made to allow adjustments for 'additions.'" [*Toll Northville, supra* at 12, quoting *WPW Acquisition Co v City of Troy*, 466 Mich 117, 121-122; 643 NW2d 564 (2002).]

The Legislature implemented Proposal A by amending relevant portions of the GPTA. See 1994 PA 415; *Moshier v Whitewater Twp*, 277 Mich App 403, 405; 745 NW2d 523 (2007). In doing so, the Legislature codified Proposal A's bifurcated assessment system in § 27a of the GPTA, subsections 1 and 2 of which provide:

> (1) Except as otherwise provided in this section, property shall be assessed at 50% of its true cash value under section 3 of article IX of the state constitution of 1963.
>
> (2) Except as otherwise provided in subsection (3),[5] for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:
>
> (a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, *plus all additions*. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.
>
> (b) The property's current state equalized valuation. [MCL 211.27a(1) and (2) (emphasis added).]

---

[5] Subsection 3 of § 27a relates to transfers of ownership, which is not pertinent here.

MCL 211.27a(11) provides that "additions" as used in § 27a has the same meaning "as defined in section 34d." MCL 211.34d(1)(b) defines "additions," in pertinent part:[6]

For taxes levied after 1994, "additions" means, except as provided in subdivision (c), all of the following:

(*i*) Omitted real property. As used in this subparagraph, *"omitted real property"* means *previously existing tangible real property not included in the assessment.* Omitted real property shall not increase taxable value as an addition unless the assessing jurisdiction has a property record card or other documentation showing that the omitted real property was not previously included in the assessment. The assessing jurisdiction has the burden of proof in establishing whether the omitted real property is included in the assessment. *Omitted real property for the current and the 2 immediately preceding years, discovered after the assessment roll has been completed, shall be added to the tax roll pursuant to the procedures established in section 154.* For purposes of determining the taxable value of real property under section 27a, the value of omitted real property is based on the value and the ratio of taxable value to true cash value the omitted real property would have had if the property had not been omitted.

\* \* \*

(*iii*) New construction. As used in this subparagraph, *"new construction"* means *property not in existence on the immediately preceding tax day and not replacement construction.* New construction includes the physical addition of equipment or furnishings, subject to the provisions set forth in section 27(2)(a) to (o). *For purposes of determining the taxable value of property under section 27a, the value of*

---

[6] Section 34d has been amended twice since the periods pertinent to this case without change to the portions of § 34d discussed in this opinion. See 2005 PA 12 and 2007 PA 31.

*new construction is the true cash value of the new construction multiplied by 0.50.* [Emphasis added.]

This Court in *Kok v Cascade Charter Twp*, 255 Mich App 535; 660 NW2d 389 (2003), addressed a situation similar to the case at bar. In *Kok* the construction of a residence took two tax years. The *Kok* Court was then faced with how to properly calculate its taxable value under the statutory scheme set forth above. In *Kok*, the petitioner's home was only 56 percent completed when it was first assessed. After the home was completed in the second tax year, the township assessed it " 'as complete new construction.' " *Id.* at 537. The home owner appealed to the Tax Tribunal, contending that the assessment after the home was completed violated Const 1963, art 9, § 3, as amended by Proposal A, and MCL 211.27a(2)(a) because it increased the home's taxable value in excess of the taxable value of the first year multiplied by the lesser of 1.05 or the inflation rate. *Kok, supra* at 537. The Tax Tribunal rejected the petitioner's claim, reasoning that the township had simply treated as new construction the difference between the home's value as completed in the second tax year and the value of the home as partially completed the prior tax year. *Id.* at 538. This Court, after reviewing § 27a and § 34d(1)(b), concluded that the Legislature had "provided a technical definition of the term 'addition,' " and no language in subsection 34d(1)(b)(*iii*) supported "finding that the taxable value of an addition, including new construction, can be determined by 'treat[ing] as new construction the difference between the value of the house as completed at December 31, 1999, and the value of the partially completed house at December 31, 1998.' " *Kok, supra* at 543. Rather, applying the plain language of pertinent statutes, the Court held:

The portion of the house that was not completed at the time the property was assessed for the 1999 tax year and that was not included in the assessment of the taxable value of the property falls within the meaning of "addition" for purposes of determining the taxable value of the property for the 2000 tax year. Applying the plain language of the statute, the taxable value of the property for the 2000 tax year is the lesser of the 1999 taxable value multiplied by the lesser of 1.05 or the inflation rate, "plus the true cash value of the new construction multiplied [by] 0.50." MCL 211.27a(2)(a); MCL 211.34d(1)(b)[*iii*]. [*Kok, supra* at 543.]

Applying the plain language of MCL 211.27a(2)(a) and MCL 211.34d(1)(b)(*iii*) to the stipulated facts of this case leads to the inescapable conclusion that respondent's assessor erred in calculating the taxable value of petitioner's property for the 1999 tax year (December 31, 1998, assessment date) by failing to include "new construction" that was an "addition" within the meaning of § 27a(2)(a) and § 34d(1)(b)(*iii*). Although the assessor properly calculated the first part of the 1999 taxable value by multiplying the property's 1998 taxable value "by the lesser of 1.05 or the inflation rate," MCL 211.27a(2)(a), the assessor failed to add the "the true cash value of the new construction multiplied by 0.50," MCL 211.34d(1)(b)(*iii*). When petitioner's property was assessed for the tax year 2000, again by only applying the applicable multiplier to the prior year's taxable value, what was "new construction" in 1999 came within the definition of "omitted real property" under § 34d(1)(b)(*i*). This conclusion flows from our determination that the word "assessment" as used in the pertinent provisions of the GPTA includes both "taxable value" and 50 percent of true cash value. Thus, the "new construction" completed in 1998 but not included in the determination of the 1999 taxable value became "omitted real property" as of the 2000 assess-

ment date and assessment dates thereafter because it was "previously existing tangible real property not included in the assessment." MCL 211.34d(1)(b)(*i*). "Omitted real property for the current and the 2 immediately preceding years, discovered after the assessment roll has been completed, shall be added to the tax roll pursuant to the procedures established in section 154." *Id*. Consequently, the Tax Tribunal erred as a matter of law by ruling that the STC lacked jurisdiction under § 154 to issue an order correcting the taxable value for the subject property for the tax years 2001 to 2003.

Our conclusion is not altered by ¶ 11 of the parties' stipulation, which states, "No portion of the subject property was 'omitted' from assessment by the Township." This stipulation was for the benefit of the Tax Tribunal after the STC had already properly assumed jurisdiction under § 154 and issued its order correcting the taxable value of petitioner's property for the tax years 2001 to 2003. Parties cannot confer jurisdiction on a court by stipulation where it otherwise does not exist. *Bowie v Arder*, 441 Mich 23, 56; 490 NW2d 568 (1992). We think the converse applies: the parties cannot by their stipulation deprive the STC of jurisdiction it had already properly exercised. Moreover, in its brief and at oral argument, respondent's counsel explained that the stipulation in ¶ 11 was not intended as a waiver of its legal argument that the assessor's error in this case resulted in "property subject to the collection of taxes" being "*incorrectly . . . omitted* for any previous year," thus conferring jurisdiction on the STC to "place *the corrected assessment value* for the appropriate years on the appropriate assessment roll." MCL 211.154(1) (emphasis added). Rather, respondent contends that it only intended to stipulate that petitioner's whole parcel of property was included on its assessment

roll. Further, respondent cites unpublished opinions of this Court that support the *legal conclusion* that taxable property was omitted from the "assessment value" within the meaning of § 154. See *Eyde Constr Co v City of Lansing*, unpublished opinion per curiam of the Court of Appeals, issued November 25, 2003 (Docket No. 239423), *Cohn v West Bloomfield Twp*, unpublished opinion per curiam of the Court of Appeals, issued November 22, 2002 (Docket No. 232917), and *Rockind v West Bloomfield Twp*, unpublished per curiam opinion of the Court of Appeals, issued March 2, 2001 (Docket No. 214620). Although not binding precedent, MCR 7.215(C)(1), we find these unpublished cases persuasive because they are consistent with our reading of the constitutional and statutory scheme.

Finally, ¶ 11 of the parties' stipulation must be read together with the rest of the parties' stipulation to determine whether the facts of this case come within the jurisdiction of the STC under § 154. When read together as a whole, the stipulated facts make plain that the assessor's error in calculating taxable value under § 27a(2) occurred in this case because the assessor failed to add the new construction in the year it was finished. In the following tax years, this initial error resulted in the omission of taxable property from taxable value. Thus, the Tax Tribunal erred as a matter of law by reaching the legal conclusion from the stipulated facts that this case did not implicate the omission of taxable property within the meaning of § 154.

Last, we address this Court's decision in *Norman Allan*, on which the Tax Tribunal and petitioner heavily rely for the proposition that the STC's jurisdiction under § 154 is limited to circumstances where the status of property as either taxable or exempt has been incorrectly reported or omitted. Although several un-

published opinions of this Court have followed *Norman Allan*, these opinions have precedential value only to the extent that they are persuasive. MCR 7.215(C)(1). Likewise, although *Norman Allan* has precedential value, it is not binding on this Court because it was decided before November 1, 1990. MCR 7.215(J)(1). We agree with respondent and the STC that the Legislature's adoption of 1982 PA 539 patently undermines this Court's reasoning in *Norman Allan*. *Norman Allan* was also decided more than a decade before the adoption of Proposal A, which dramatically altered Michigan's property tax system.

In *Norman Allan*, the city of Detroit filed petitions in the Tax Tribunal seeking to increase the personal property tax assessments of two respondent taxpayers, Norman Allan & Company and E. L. Rice & Company. With respect to Norman Allan, the city contended that the company incorrectly reported the value of its personal property subject to taxation. With respect to E. L. Rice, the city contended, among other things, that the company had omitted certain inventory from its report of personal property subject to taxation. *Norman Allan*, *supra* at 187-188. The Tax Tribunal granted an order favoring the city and increasing the assessed value of Norman Allan's personal property and adding the assessed value of the omitted inventory in the case of E. L. Rice. On appeal, this Court reviewed which of two statutory provisions, MCL 211.22 or MCL 211.154, might control the city's claims. *Norman Allan*, *supra* at 189-190.

At the time *Norman Allan* was decided, the first sentence of § 154 only referred to "incorrectly reported" property liable to taxation, and the second sentence provided, " *'If it appears to the commission that no reason in fact or in law exists which would justify an*

*exemption of such property from taxation* for those 2 years, it shall immediately place the total aggregate assessment value for the omitted years on the then current assessment roll in the column provided.' " *Norman Allan, supra* at 190 (emphasis added). The Court held that § 154 "applies when property has been incorrectly reported as exempt property but is thought to be (*i.e.*, is 'made to appear to be') taxable property." *Norman Allan, supra* at 191. Although the Court opined that the language of the statute that it emphasized "reinforced" its conclusion, the Court pointed to no other language in § 154 that supported its interpretation that § 154 does not apply when property is undervalued because something other than the status of the property has been "incorrectly reported." *Norman Allan, supra* at 191-193; cf. *Eagle Glen, supra* at 3 (acknowledging "that MCL 211.154 has been amended since the decision in *Norman Allan*," but opining that "it is apparent to us that the *Norman Allan* Court did not rely *solely* on this excerpted language in reaching its decision") (emphasis in original). 1982 PA 539 eliminated entirely the language emphasized and relied on by the *Norman Allan* Court and added "omitted" taxable property to § 154.

The only other basis for the decision in *Norman Allan* regarding § 154 is the Court's conclusion that MCL 211.22 was the more pertinent and controlling statute under the facts of that case. At the time of the decision, MCL 211.22 provided for correcting both "incorrectly" reported as well as "omitted" taxable property. Specifically, the statute provided, in part:

"*[Testimony Assessment.]* If the supervisor or assessing officer, a member of the state tax commission, or the director or deputy director of the county tax or equalization department as mandatorily established under section 34 of

this act *shall be satisfied that any statement* so made is incorrect * * * [he] is hereby authorized to set down and assess to such person, firm or corporation so entitled to be assessed, such amount of real and personal property as he may deem reasonable and just.

"Whenever examination and investigation reveal that the *written statement of personal property is incorrectly made*, that any data submitted is false, or that certain personal property has been omitted from the statement, the supervisor or assessing officer *may petition* the state tax commission to revise the personal property assessment of the person submitting such erroneous statement, *if the petition is filed on or before June 30 of each year.*" [*Norman Allan, supra* at 189-190, quoting the version of MCL 211.22 then in effect (emphasis in original).]

The Court held that § 22 "applies when the assessor petitions the tribunal to increase the value on the tax roll of personal property inadequately and improperly reported by a taxpayer but which is conceded to be taxable." *Norman Allan, supra* at 191. But the Court held that the city's petition had not been timely filed. *Id.* at 193. In particular, the Court held that because the city was "challenging the *statements* submitted by respondents, it should have proceeded under MCL 211.22; MSA 7.22, and the failure to comply with its requirements necessitates a dismissal of both cases." *Norman Allan, supra* at 193 (emphasis in original).

The Legislature apparently was not pleased with the *Norman Allan* decision. 1982 PA 539 also eliminated the language in § 22 that the *Norman Allan* Court relied on in reaching its conclusions. The amended statute eliminated any need for taxing authorities to timely file a petition with any other authority, but permitted a supervisor or assessing officer, a member of the state tax commission, or the director or deputy director of the county tax or equalization department to make contemporaneous investigations regarding prop-

erty tax statements. The 1982 legislation also added "omitted" taxable property to § 154 and expanded the scope of that section to correct "assessment value" to "not to exceed the current assessment year and 2 years immediately preceding the date of discovery . . . ." MCL 211.154, as amended by 1982 PA 539.

In sum, the Legislature's adoption of 1982 PA 539 virtually eliminated all language in both MCL 211.154 and MCL 211.22 on which the *Norman Allan* Court relied in its analysis of those two statutory provisions. "[W]hen a legislative amendment is enacted soon after a controversy arises regarding the meaning of an act, it is logical to regard the amendment as a legislative interpretation of the original act . . . ." *Adrian School Dist v Michigan Pub School Employees' Retirement Sys*, 458 Mich 326, 337; 582 NW2d 767 (1998) (citations and quotation marks omitted). The Legislature consolidated the authority of the STC under § 154 to correct incorrect assessment values that result when property subject to taxation is "incorrectly reported or omitted" and eliminated the language in the second sentence of § 154 emphasized and relied on by the *Norman Allan* Court in reaching its conclusions. 1982 PA 539 must be considered the Legislature's rejection of the *Norman Allan* decision. Moreover, the plain language of § 154, read in light of the post-Proposal A tax scheme, supports the conclusion that § 154 confers jurisdiction on the STC whenever taxable property has been "incorrectly reported or omitted" for whatever reason and an incorrect "assessment value" results. Therefore, we conclude that *Norman Allan* is not reliable precedent or authority for our interpretation of § 154.

For all the foregoing reasons, we hold that the Tax Tribunal erred as a matter of law by concluding that the STC lacked jurisdiction in this case. Therefore, we

reverse the judgment of the Tax Tribunal and reinstate the order of the STC correcting the taxable values of petitioner's property for the tax years 2001 to 2003. As the prevailing party, respondent may tax costs pursuant to MCR 7.219.