*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JANEY M GRIER,

        Petitioner-Appellant,

v

TOWNSHIP OF KOYLTON,

        Respondent-Appellee.

UNPUBLISHED
August 29, 2024

No. 366221
Tax Tribunal
LC No. 22-002774-TT

Before: REDFORD, P.J., and GADOLA, C.J., and RIORDAN, J.

PER CURIAM.

Petitioner Janey Grier appeals as of right the Tax Tribunal's May 3, 2023 final opinion and judgment setting the value of the subject property for tax year 2022 at $290,000 true cash value (TCV), $145,000 state equalized value (SEV), and $145,000 taxable value (TV).[1] On appeal, petitioner argues that the Tribunal erred by rejecting her contentions of $222,000 TCV, $111,000 SEV, and $111,000 TV for the subject property. Respondent Koylton Township participated below and on appeal. For the reasons set forth, we affirm.

## I. FACTS

On July 23, 2022, petitioner filed her petition in the Tribunal, alleging that "[t]he current assessed value and taxable value for 2022 are too high because they do not reflect the true cash value of our property. There are unusual conditions for the area, the values do not take into account our location, topography, historic use, and type of land." Petitioner explained that the subject

---

[1] To be precise, the subject property consists of two adjacent parcels, a 40-acre parcel and a 41.13-acre parcel. The Tribunal set the values for the former parcel at $144,000 TCV, $72,000 SEV, and $72,000 TV, while it set the values for the latter parcel at $146,000 TCV, $73,000 SEV, and $73,000 TV. For ease of discussion, we will treat the two parcels as being singularly valued unless otherwise appropriate.

property, which is in Tuscola County, currently had a TV of $137,900 for tax year 2022, but she believed that it should have a TV of $111,000.

On August 5, 2022, respondent answered the petition, alleging as follows:

> The property was purchased in August, 2021 for $290,000 for both parcels, totaling 81.13 acres. The two parcels together are assessed for a cash value of $275,800. They are assessed for less than they were just purchased for on the open market. The assessments are consistent with other similar property in the township.

Respondent urged the Tribunal to affirm the board of review's assessment of the subject property at $137,900 TV. This amounted to a TCV of $3,400 per acre.

On March 7, 2023, petitioner filed her hearing brief and exhibits in support. In relevant part, petitioner identified 10 comparable sales between September 2019 and June 2021 of properties between 70 and 80 acres. According to petitioner, when her purchase of the subject property in August 2021 was added to the list of comparable sales, the average price per acre was $2,823.46. Petitioner argued that in light of the comparable sales, as well as the fact that the subject property was near "blight" and a loud bed-and-breakfast, the current TCV of $3,400 per acre should be reduced to $2,750 per acre.

Respondent filed its hearing evidence a few weeks later. The appraisal, which was prepared for the Tribunal proceedings, used seven comparable sales between August 2020 and December 2021 of properties between 40 and 102 acres. The average sales price per acre ranged between $2,750 and $5,103. Given these comparable sales, respondent valued the subject property at $3,500 per acre, for a total of $284,000, as of December 31, 2021.[2]

Petitioner filed supplemental evidence shortly before the hearing to rebut respondent's evidence. The supplemental evidence included photographs of a storage shed, cabin, and water well on the subject property, as well as additional documentation about some of respondent's comparable sales in its appraisal.

The Tribunal held a hearing on April 3, 2023, during which the parties argued consistently with their respective briefs and evidence. Relevant for this appeal, respondent noted that during its investigation of the subject property for these proceedings, it discovered that the subject property was improved with various structures:

> [Petitioner] also went through and said several times in the rebuttal that her parcel has no improvements. And that is factually untrue. You can talk about the quality of construction and how much value they had in your opinion, but there are improvements on your property. There is a well. There is a storage shed, and there is a second building.

---

[2] As explained *infra*, the increase in TCV by respondent apparently was due to the fact that it discovered improvements on the land while these proceedings were ongoing.

The question is, is it a shed, is it a cabin, is it what -- I don't know exactly, and that's in the eye of the beholder. But to suggest or to say that there are no improvements is factually untrue. So it's important that we realize that there are improvements on the property that have not been referenced on the assessor roll in years past because there were not permits and I had no access to the property.

On May 3, 2023, the Tribunal issued its final opinion and judgment, determining as follows. First, the Tribunal rejected petitioner's supplemental evidence, explaining:

Petitioner's supplementary documentary evidence and testimony is not consistent or persuasive. As noted in the Findings of Fact, the subject's contiguous adjoining parcel is not landlocked; this parcel adjoins the parcel that has road frontage and road access on English Road. Second, the subject property is improved with a one room structure that has a wall mounted space heater (as shown on the Realcomp MLS submitted by Respondent). The MLS listing described a property that has woods, a lake and semi-privacy for recreational enthusiasts. The subject parcels are more than just vacant land. Third, the Tribunal is not persuaded that the subject parcels are located in an area of alleged *blight*. Again, description of the subject property as well as the sales data presented by both parties indicates that the subject market area is positively influenced by residential, recreational, and agricultural development. Fourth, articles referencing marijuana grow operations (electrical use) for proposed township ordinances in the future are not relevant to the December 31, 2021 tax day. Moreover, the issue of marijuana growers in the township does not appear to have deterred Petitioner from the purchase of the subject parcels in August 2021. Fifth, the unpublished MTT opinion (Docket No. 19-000567) was presented without any application or analysis to the present case. Other than that FOJ involving a property in Tuscola County, the Tribunal is unable to ascertain or assume the application of that case in this present tax appeal matter. For these reasons, Petitioner's ancillary documentation is given no weight or credibility in the independent determination of market value for the subject property. [Footnotes omitted.]

Second, the Tribunal rejected most of petitioner's comparable sales, explaining:

Regarding Petitioner's summary of Tuscola County vacant land sales (Petitioner's Exhibit E), the sales data is a customary presentation. However, the sales data has limitations. First, as challenged by Respondent, Petitioner's sales were not adjusted to the subject. Said differently, the sales were not compared or contrasted to the subject through qualitative or quantitative analysis. Petitioner's conclusory statements for her sales data pale in comparison to Petitioner's rebuttal analysis of Respondent's comparable sales. Second, Petitioner's 2019 and 2020 sales are too far removed from the December 31, 2021 tax day. Again, without any adjustments or explanatory narration, these sales are not relevant for analysis. Third, Petitioner's remaining sales occurring in 2021 are similar to the subject in acreage and location. However, the sale located on McGregory Road involved conservancy land and was not analyzed relative to the subject's characteristics and

amenities. Fourth, Petitioner derived an average from sale prices, acres, and net acres to an average $/acre. Reconciliation of data is more than a calculation. . . .

Third, the Tribunal largely accepted respondent's appraisal, explaining:

Respondent's sales comparison approach is a conventional framework for a comparative analysis. Contrary to Petitioner's challenges, this comparative analysis is the most reliable and credible valuation evidence in this tax appeal matter. First, [Respondent's] comparative analysis includes adjustments for note differences between the comparable sales and the subject property. Petitioner's dislike for Respondent's alleged lack of adjustments is disingenuous given the fact that Petitioner did not develop a comparative analysis with any adjustments. Second, Respondent's comparative sales include four sales with tillable acreage and three sales without tillable acreage. Moreover, Respondent has adjusted those superior tillable acreage sales downward to the subject. Again, comparing and contrasting characteristics and amenities is acceptable valuation methodology. Three, in like fashion, Respondent has analyzed sales with superior and inferior acreage to the subject. Sales 1 and 2 are similar to the subject in acreage; sales 3, 5, 6 and 7 have smaller acreage; and sale 4 is superior to the subject in acreage. Valuation practice does not mandate that comparable sales must have exact and precise features. Perfect comparable sales are always preferred but comparable sales are not always perfect to a subject property. Fourth, as a matter of fact, the subject's improvements were properly analyzed by Respondent. As noted, the subject's MLS listing and photographs are detailed (interior and exterior photographs) of the subject cabin. Respondent's photographs evidence is more persuasive than Petitioner's photographs (which exclude interior photographs) of the subject's cabin. Sales 1, 3, 5, 6, and 7 are adjusted upward to the subject. Sales 2 and 4 are adjusted downward to the subject. . . .

Accordingly, as noted, the Tribunal set the value of the subject property for tax year 2022 at $290,000 TCV, $145,000 SEV, and $145,000 TV.

This appeal followed.

## II. STANDARD OF REVIEW

The standard of review for Tax Tribunal cases is multifaceted. Where fraud is not claimed, this Court reviews the tribunal's decision for misapplication of the law or adoption of a wrong principle. We deem the tribunal's factual findings conclusive if they are supported by competent, material, and substantial evidence on the whole record. But when statutory interpretation is involved, this Court reviews the tribunal's decision de novo. [*Wexford Med Group v City of Cadillac*, 474 Mich 192, 201-202; 713 NW2d 734 (2006) (quotation marks and citations omitted).]

## III. VALUATION

Petitioner argues that the Tribunal erred by determining that the subject property's TCV was $290,000 for tax year 2022 and, relatedly, that the SEV and TV were incorrectly determined as well. In support of this argument, petitioner raises four specific contentions. First, petitioner contends that the Tribunal failed to recognize that the proper date of valuation for the 2022 tax year was December 31, 2021. Second, petitioner contends that the Tribunal erred by relying on respondent's appraisal because the appraisal "combined both residential and agricultural real property classifications as a basis for its independent determination of the Subject Property's true cash value." Third, petitioner contends that the Tribunal erred by failing to treat her comparable sales in the same manner as respondent's comparable sales because, according to petitioner, respondent failed to properly adjust its comparable sales to account for differences with the subject property. Fourth, petitioner contends that the Tribunal erred by determining that the subject property's sale price in 2021 equaled its TCV. We disagree with each of the petitioner's contentions.

"With respect to general valuation principles in the Tax Tribunal, the petitioner has the burden to establish the true cash value of property." *President Inn Props, LLC v City of Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011). "Nevertheless, because Tax Tribunal proceedings are de novo in nature, the Tax Tribunal has a duty to make an independent determination of true cash value." *Id*.

TCV is "the usual selling price of a given piece of property between a willing buyer and a willing seller . . . ." *Meadowlanes Ltd Dividend Housing Ass'n v City of Holland*, 437 Mich 473, 484; 473 NW2d 636 (1991) (quotation marks and citation omitted). "The sales-comparison approach indicates true cash value by analyzing recent sales of similar properties, comparing them with the subject property, and adjusting the sales price of the comparable properties to reflect differences between the two properties." *Id*. at 485 n 19. In any event, "the final value determination must represent the usual price for which the subject property would sell." *Id*. at 485.

The Tribunal's finding that the TCV of the subject property was $290,000 for tax year 2022 was supported by substantial evidence. Initially, while the fact that the subject property was purchased by petitioner for $290,000 in August 2021 in an arm's-length transaction does not conclusively establish that the TCV is $290,000, it does provide a helpful starting point. Moreover, as the Tribunal correctly noted, respondent's appraisal, which identified a slightly lower figure of $284,000, reasonably considered comparable sales. The few comparable sales that consisted of agricultural land were substantially adjusted downward to match the residential nature of the subject property. Respondent made other adjustments as well, including, for example, whether the comparable property had an improved driveway. We ultimately agree with the Tribunal that "the subject's purchase price is commensurate with the subject market . . . ."

The four contrary arguments raised by petitioner are meritless. First, the Tribunal complied with MCL 211.2(2) by determining the TCV for tax year 2022 by identifying the TCV as of December 31, 2021. This is shown by the fact that the Tribunal repeatedly referenced December 31, 2021, as the relevant "tax day," as well as the fact that the appraisal expressly reflected December 31, 2021, as the relevant valuation date.

Second, while the appraisal submitted by respondent did include comparable sales for both agricultural and residential land, as noted, the agricultural land was adjusted downward to reflect the reality that the subject property is residential in nature.[3] Thus, no error occurred in this regard.

Third, the Tribunal reasonably considered the comparable sales submitted by both parties but concluded that the ones submitted by respondent were more credible. The Tribunal was correct that only respondent adjusted its comparable sales. Moreover, the Tribunal also was correct that most of petitioner's comparable sales were from 2019 and 2020, rendering them minimally relevant for the tax date of December 31, 2021. The Tribunal was within its discretion to consider these facts and accord more weight to respondent's appraisal than petitioner's unadjusted list of land sales in the area.

Fourth, the Tribunal did not conclusively determine that the TCV of the subject property was its sale price. See *Antisdale v City of Galesburg*, 420 Mich 265, 278; 362 NW2d 632 (1984) ("The rule in Michigan, as in many other states, is that the selling price of a particular piece of property is not conclusive as evidence of the value of that piece of property."). The Tribunal instead considered the sale price as a relevant fact, and then considered other evidentiary items, such as respondent's appraisal and the photographs of the subject property submitted by the parties, to reach its ultimate conclusion. In other words, while the Tribunal is prohibited from

---

[3] In separate proceedings, petitioner argued in the state tax commission (STC) that the subject property should be classified as "agricultural real," not "residential real." The STC disagreed, reasoning that the record does not show that petitioner was "actively farming currently," and "a majority of the land is wooded." This Court recently affirmed that finding in an unpublished opinion, stating as follows:

> Given our limited scope of review, we find that the STC's determination that the subject property be classified as residential real for the 2022 tax year was authorized by law. Grier's evidence of agricultural use focused on activities in 2022 (which is the 2023 tax year), not 2021 (which is the 2022 tax year). Grier failed to satisfy her burden to demonstrate that the property should be classified as agricultural for the 2022 tax year pursuant to MCL 211.34c(2)(a). The STC's decision that there was not adequate evidence to support an agricultural classification of the subject property for the 2022 tax year followed the lawful procedure set forth in MCL 211.34c(6), was not in violation of a statute, and was within the STC's authority and jurisdiction. . . . [*Grier v State Tax Comm'n*, unpublished per curiam opinion of the Court of Appeals, issued May 23, 2024 (Docket No. 365849), at 10.]

Given that petitioner has taken seemingly inconsistent positions—arguing that the subject property is residential in nature for the purposes of this case but arguing that the subject property is agricultural in nature for the purposes of the separate case—it is understandable that respondent's appraisal included comparable sales for both residential land and agricultural land.

automatically assuming that a property's TCV is equal to its sale price, it is not prohibited from considering all of the evidence to reach that same conclusion. No error occurred.

For these reasons, we conclude that the Tribunal did not misapply the law or adopt a wrong principle when it determined the taxable value of the subject property, and its decision in this regard was supported by substantial evidence.

## IV. JURISDICTION

Petitioner argues that the Tribunal lacked jurisdiction to add the value of the previously unidentified structures to the TCV of the subject property for tax year 2022. According to petitioner, under MCL 211.154, only the STC has jurisdiction to add omitted real property to a tax valuation. Alternatively, petitioner argues that the structures are not an improvement to the subject property because they are not "annexed to the realty." We disagree.

MCL 211.154 provides, in relevant part:

(1) If the state tax commission determines that property subject to the collection of taxes under this act . . . has been incorrectly reported or omitted for any previous year, but not to exceed the current assessment year and 2 years immediately preceding the date the incorrect reporting or omission was discovered and disclosed to the state tax commission, the state tax commission shall place the corrected assessment value for the appropriate years on the appropriate assessment roll. The state tax commission shall issue an order certifying to the treasurer of the local tax collecting unit if the local tax collecting unit has possession of a tax roll for a year for which an assessment change is made or the county treasurer if the county has possession of a tax roll for a year for which an assessment change is made the amount of taxes due as computed by the correct annual rate of taxation for each year except the current year.

* * *

(7) A person to whom property is assessed under this section may appeal the state tax commission's order to the Michigan tax tribunal.

MCL 211.154 "confer[s] administrative jurisdiction on the STC to correct erroneous property tax assessments in specific limited circumstances. Specifically, the STC may correct an assessment value that results in an assessment change." *Superior Hotels, LLC v Mackinaw Twp*, 282 Mich App 621, 630; 765 NW2d 31 (2009) (quotation marks and citation omitted). That is, it confers "jurisdiction to correct assessment values for any previous year, but not to exceed the current assessment year and 2 years immediately preceding the date the incorrect reporting or omission was discovered and disclosed to the state tax commission." *Id.* (quotation marks and citation omitted).

In this case, the Tribunal briefly referenced "the subject's improvements" in its final opinion and judgment. From that reference, petitioner infers that the Tribunal increased its TCV of the subject property on the basis of the newly discovered storage shed, cabin, and water well, which apparently had existed on the subject property for several years without respondent's

knowledge. Petitioner argues that under MCL 211.154, only the STC had jurisdiction to consider that omitted property.

This argument misses the mark. It is true, as petitioner asserts, that MCL 211.154 provides that the STC has jurisdiction to correct a tax roll when property "has been incorrectly reported or omitted." MCL 211.154(1). However, this statute concerns situations in which a previous tax roll has been underreported on the basis of omitted property. In *Superior Hotels*, for example, the municipality sought to retroactively correct the taxable value of commercial real estate for tax years 2001 to 2003. *Superior Hotels*, 282 Mich App at 623. This case, in contrast, simply concerns the most recent tax year available before the Tribunal, tax year 2022. Thus, there was no tax roll to be corrected; rather, the tax roll was to be determined in the first instance. As a result, the Tribunal did not exceed its jurisdiction by deciding this case.[4]

Petitioner alternatively argues that the storage shed and cabin cannot be taxed because they are on blocks and, therefore, are not attached to the land. Under MCL 211.2(1)(a), "[f]or the purpose of taxation, real property includes . . . [a]ll land within this state, all buildings and fixtures on the land, and all appurtenances to the land, except as expressly exempted by law." We are inclined to agree with petitioner that the storage shed and cabin are not "fixtures on the land" because they are not annexed to the realty. See *Morris v Alexander*, 208 Mich 387, 390; 175 NW 264 (1919). However, the storage shed and the cabin satisfy any reasonable definition of "building." And, this Court has explained that a "building" may be taxable under MCL 211.2(1)(a) regardless of whether it is affixed to the soil. See *Schultz v Denton Twp*, 252 Mich App 528, 532; 652 NW2d 692 (2002) ("We note that neither MCL § 125.1041 nor MCL § 211.2a makes a mobile home's attachment to the soil an issue in determining its status as real property for purposes of taxation."). In any event, a review of the Tribunal's decision indicates that its valuation was almost exclusively based upon the comparable sales discussed by the parties, and that it did not accord significant weight to the value of these outdated structures.

## V. SUPPLEMENTAL EVIDENCE

Petitioner argues that the Tribunal erred when it determined that her supplemental evidence was not "consistent or persuasive." Petitioner asserts that each of the five reasons identified by the Tribunal in this regard was factually erroneous, and that the Tribunal should have considered her supplemental evidence to reduce the subject property's tax valuation. We disagree and will address each reason identified by the Tribunal and discussed by petitioner in turn.

First, the Tribunal stated that "the subject's contiguous adjoining parcel is not landlocked; this parcel adjoins the parcel that has road frontage and road access on English Road." This is a correct statement. While the north parcel itself does not have direct access to a public road, the south parcel does have such access. And, because petitioner purchased the two parcels together, it was reasonable for the Tribunal to consider the entire subject property as having access to a public road.

---

[4] Petitioner suggests that the Tribunal erred under MCL 211.27a as well. We disagree. Because the TV of the subject property equaled its SEV, the Tribunal complied with MCL 211.27a(3).

-8-

Second, the Tribunal stated that "[t]he subject parcels are more than just vacant land." This also is a correct statement. The subject property has woods and a lake, as well as structures that may be used, at a minimum, for storage. While petitioner suggests that the structures actually devalue the subject property because they are so dilapidated as to require removal, the Tribunal was within its discretion to find otherwise in light of the pictures submitted by both parties.

Third, the Tribunal stated that it was "not persuaded that the subject parcels are located in an area of alleged *blight*." This was a reasonable finding. While petitioner submits some photographic evidence indicating that a property across the street from the subject property has older vehicles on the lawn, these photographs do not demonstrate that the entire area is blighted, such that a reduction in valuation is warranted.

Fourth, the Tribunal stated that "articles referencing marijuana grow operations (electrical use) for proposed township ordinances in the future are not relevant to the December 31, 2021 tax day."[5] According to petitioner, the Tribunal erred because it "focused on the proposed ordinance, rather than the reason for the ordinance." Petitioner explains that she "provided evidence of unusual pricing activity and unusual buyer demand due to an influx of marijuana growers." We struggle to follow this argument. If it is true, as petitioner suggests, that respondent and other nearby areas are having land purchased by marijuana growers, it would seem that marijuana growers, given the recent growth of the marijuana industry within our state, would be providing an upward force on prices, not a downward force on prices. Alternatively, if petitioner is concerned that the proposed ordinance would have a downward force on prices because marijuana growers would be driven away, we agree with the Tribunal that the proposed ordinance was too attenuated from the December 31, 2021 tax day to be accorded significance.

Fifth, the Tribunal stated that "the unpublished MTT opinion (Docket No. 19-000567) was presented without any application or analysis to the present case." We have reviewed that opinion, which was presented to the Tribunal in the instant case, and find it irrelevant to the issues at hand. The Tribunal did not err by disregarding it.

Accordingly, the Tribunal did not err by determining that petitioner's supplemental evidence "is not consistent or persuasive."

## VI. UNPRESERVED ISSUES

Finally, petitioner argues that respondent violated her procedural due-process rights when it failed to preserve and produce minutes from the board of review meeting, and that respondent violated various statutes and constitutional provisions when it failed to properly respond to her request to have the subject property reclassified from residential to agricultural. However, we decline to address these issues for the same reasons that the panel declined to address similar issues in the related case:

---

[5] Petitioner submitted to the Tribunal a January 2022 news article indicating that respondent was considering a "proposed ordinance governing electrical use above 200 amps" to limit large-scale electrical use for illegal marijuana growing operations.

Finally, because Grier did not raise the constitutional due process or equal protection issues before the STC or the circuit court, those issues are not preserved and we are not obligated to consider them. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2-3 ("In civil cases, Michigan follows the 'raise or waive' rule of appellate review.") (cleaned up). We will generally decline to address unpreserved issues unless the failure to do so would result in manifest injustice, the issue involves a question of law and the facts necessary for its resolution have been presented, or resolving the issue is necessary to properly determine the case. *Id*. at ___; slip op at 3. Our Supreme Court has cautioned that this discretion should be exercised sparingly and only in exceptional circumstances. *Napier v Jacobs*, 429 Mich 222, 233-234, 414 NW2d 862 (1987). We decline to exercise our discretion here. [*Grier v State Tax Comm'n*, unpublished per curiam opinion of the Court of Appeals, issued May 23, 2024 (Docket No. 365849), at 11.]

Simply put, because the issues raised by petitioner are unpreserved, we decline to address them.

## VII.  CONCLUSION

There were no errors in the Tribunal proceedings below. Therefore, we affirm.

/s/ James Robert Redford
/s/ Michael F. Gadola
/s/ Michael J. Riordan

-10-