# STATE OF MICHIGAN

# COURT OF APPEALS

SUNNYBROOK GOLF BOWL & MOTEL, INC.,

Petitioner-Appellant,

v

CITY OF STERLING HEIGHTS,

Respondent-Appellee.

UNPUBLISHED
December 7, 2017

No. 332357
Tax Tribunal
LC No. 00-455797

Before: SERVITTO, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Petitioner, Sunnybrook Golf Bowl and Motel, appeals as of right a final opinion and judgment of the Tax Tribunal (Tribunal) setting the true cash value and taxable value of plaintiff's property for the 2013 and 2014 tax years. We affirm.

Petitioner filed a tax petition with the Tribunal in May 2013 challenging the true cash and taxable values assigned by the City of Sterling Heights to its 142.36 acre parcel of property for the 2013 and 2014 tax years. The subject property contains a golf course, hotel, and bowling center. In 2013 respondent assigned the property a true cash value (TCV) of $5,881,600, and a taxable value (TV) of $2,940,800. In 2014 respondent assigned the property a TCV of $5,636,400 and a TV of $2,818,200. A two-day hearing took place with respect to petitioner's petition on September 21 and 23, 2015. At the conclusion of the hearing, the Tribunal judge issued a final opinion and judgment finding that the TCV of the property in 2013 was $8.8 million and its TV $4.4 million, and that in 2014 the TCV was $8.7 million with a TV of $4,350,000.00. The increase was based on the Tribunal's finding that the 130.52 acres of land under the golf course (as opposed to the land improvement of the golf course itself) had been omitted from the assessor's valuation. This appeal followed.

Petitioner's first argument is, in a nutshell, that the Tribunal erred in adding the "omitted" property to the tax roll, for myriad reasons. We find that none of these asserted reasons have merit.

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." *Michigan Properties, LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012), quoting Const. 1963, art. 6, § 28. This Court is thus bound by the Tribunal's factual determinations; but, a Tribunal decision that is not

supported by competent, material, and substantial evidence on the whole record is an "error of law" within the meaning of Const. 1963, art. 6, § 28. *Great Lakes Div of Nat Steel Corp v City of Ecorse*, 227 Mich App 379, 388–89; 576 NW2d 667 (1998). "Substantial" evidence is that which a reasonable mind would accept as sufficient to support the conclusion. *Id*.

Several of the allegations of error were not raised by petitioner before the Tribunal and are thus unpreserved. We review petitioner's unpreserved claims for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763–764; 597 NW2d 130 (1999). To establish plain error, petitioner must show "(1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected defendant's substantial rights." *Henderson v Dept of Treasury*, 307 Mich App 1, 9; 858 NW2d 733 (2014). The third factor requires petitioner to show he was prejudiced by the error such that it affected the outcome of the proceedings before the Tribunal. *Id*.

Petitioner contends that the Tribunal had no jurisdiction to add the omitted property to the tax roll because MCL 211.154 authorizes only the State Tax Commission (STC), not the Tribunal, to add omitted property to a tax roll. Issues of statutory interpretation are questions of law that this Court reviews de novo. *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Michigan*, 492 Mich 503, 515; 821 NW2d 117 (2012).

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, "[t]he words of a statute provide 'the most reliable evidence of its intent....' [*Id*.]

MCL 211.154 provides, in relevant part:

(1) If the state tax commission determines that property subject to the collection of taxes under this act, including property subject to taxation under 1974 PA 198, MCL 207.551 to 207.572, 1905 PA 282, MCL 207.1 to 207.21, 1953 PA 189, MCL 211.181 to 211.182, and the commercial redevelopment act, 1978 PA 255, MCL 207.651 to 207.668, has been incorrectly reported or omitted for any previous year, but not to exceed the current assessment year and 2 years immediately preceding the date the incorrect reporting or omission was discovered and disclosed to the state tax commission, the state tax commission shall place the corrected assessment value for the appropriate years on the appropriate assessment roll. The state tax commission shall issue an order certifying to the treasurer of the local tax collecting unit if the local tax collecting unit has possession of a tax roll for a year for which an assessment change is made or the county treasurer if the county has possession of a tax roll for a year for which an assessment change is made the amount of taxes due as computed by the correct annual rate of taxation for each year except the current year. Taxes

computed under this section shall not be spread against the property for a period before the last change of ownership of the property.

First and foremost, by its clear language the above statute applies to the STC, and to property that the *state tax commission* has determined to have been incorrectly reported or omitted. The statute does not speak to the Tribunal or to property the Tribunal has determined to have been omitted, nor does it prohibit the Tribunal from adding omitted property to an assessment. Petitioner has provided no authority suggesting otherwise.

Second, the roles and duties of the STC and the Tribunal are distinct and set forth in different statutes. The duties of the STC are set forth at MCL 211.150 and include: "to have and exercise general supervision over the supervisors and other assessing officers of this state;" "to confer with and advise assessing officers as to their duties;" "to receive all complaints as to property liable to taxation that has not been assessed or that has been fraudulently or improperly assessed;" and, "to furnish the state board of equalization at each session thereof an estimate of the actual cash value of the taxable property of each county in the state, and to meet with the state board of equalization when requested by said board to do so." The Tax Tribunal's powers and duties, on the other hand, include, but are not limited to:

> (a) Affirming, reversing, modifying, or remanding a final decision, finding, ruling, determination, or order of an agency.
>
> (b) Ordering the payment or refund of taxes in a matter over which it may acquire jurisdiction.
>
> (c) Granting other relief or issuing writs, orders, or directives that it deems necessary or appropriate in the process of disposition of a matter over which it may acquire jurisdiction.

* * *

[MCL 205.732]

And, the Tribunal has exclusive and original jurisdiction over, among other things, "(a) A proceeding for direct review of a final decision, finding, ruling, determination, or order of an agency relating to assessment, valuation, rates, special assessments, allocation, or equalization, under the property tax laws this state (b) A proceeding for a refund or redetermination of a tax levied under the property tax laws of this state." MCL 205.731.

In *Superior Hotels, LLC v Mackinaw Twp*, 282 Mich App 621, 630; 765 NW2d 31 (2009), a panel of this Court discussed the distinction between the STC and the Tribunal and the application of MCL 211.154. It noted that the Tribunal is a "quasi-judicial agency," having jurisdiction over *final* agency decisions "relating to assessment" and "valuation ... under property tax laws." MCL 205.731(a). *id*. at 631, whereas the STC is an "agency" as defined in MCL 205.703(a), i.e., "a board, official, or administrative agency who is empowered to make a decision, finding, ruling, assessment, determination, or order that is subject to review under the jurisdiction of the tribunal or who has collected a tax for which refund is claimed." *Id*. The *Superior Hotels* Court noted that "in § 154 the Legislature has conferred administrative

-3-

jurisdiction on the STC [state tax commission] to correct erroneous property tax assessments in specific limited circumstances. Specifically, the STC may correct an 'assessment value' that results in an 'assessment change.' " The Court further stated, ". . . subsection 7 of § 154 clearly provides that after a final decision by the STC in a § 154 proceeding, the appellate jurisdiction of the Tax Tribunal may be invoked, as in this case: 'A person to whom property is assessed pursuant to this section may appeal the state tax commission order to the Michigan tax tribunal.' MCL 211.154(7).'" *Id*. at 631. The Tax Tribunal, then, is vested with "jurisdiction over matters previously heard by the STC *as an appellate body*." *Id*. at 632.

Most importantly, the Tax Tribunal is charged with determining a property's taxable value. MCL 205.737(1) specifically provides that "The tribunal shall determine a property's taxable value pursuant to section 27a of the general property tax act, 1893 PA 206, MCL 211.27a." MCL 211.27a provides, in relevant part:

(1) Except as otherwise provided in this section, property shall be assessed at 50% of its true cash value under section 3 of article IX of the state constitution of 1963.

(2) Except as otherwise provided in subsection (3), for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:

(a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.

(b) The property's current state equalized valuation.

\* \* \*

(11) As used in this section:

(a) "Additions" means that term as defined in section 34d.

MCL 211.34d(1), in turn, defines "additions" as follows:

(b) For taxes levied after 1994, "additions" means, except as provided in subdivision (c), all of the following:

(*i*) Omitted real property. As used in this subparagraph, "omitted real property" means previously existing tangible real property not included in the assessment. Omitted real property shall not increase taxable value as an addition unless the assessing jurisdiction has a property record card or other documentation showing that the omitted real property was not previously included in the assessment. The assessing jurisdiction has the burden of proof in establishing whether the omitted real property is included in the assessment. Omitted real property for the current

-4-

and the 2 immediately preceding years, discovered after the assessment roll has been completed, shall be added to the tax roll pursuant to the procedures established in section 154.[2] For purposes of determining the taxable value of real property under section 27a, the value of omitted real property is based on the value and the ratio of taxable value to true cash value the omitted real property would have had if the property had not been omitted.

Thus, in order for the Tribunal to accomplish its stated duty (set forth in MCL 205.737) of determining a property's taxable value pursuant to MCL 211.27a, it must follow the directive in MCL 211.27a(2) to state the taxable value of each parcel of property as the lesser of the following: "(a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all *additions*. . . (b) The property's current state equalized valuation" (emphasis added). And, "additions" is clearly defined to include omitted property. The Tribunal therefore has not only the jurisdiction, but the duty to address omitted property when calculating a property's taxable value. Petitioner's reliance on MCL 211.154 to argue otherwise is in error.

Petitioner next argues that the Tribunal did not notify it that the Tribunal was considering the issue of omitted property or that it would be increasing the TV of the property based on omitted property, thereby violating petitioner's Due Process rights. We disagree.

Both the United States' and Michigan's constitutions prevent the taking of property without due process of law. Const 1963, art 1, § 17; US Const, Am V. An owner of real property has a significant interest in property, entitling him or her to due process protection with respect to the assessment and collection of taxes. *Brandon Twp v Tomkow*, 211 Mich App 275, 282–283; 535 NW2d 268 (1995). Due process generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decision maker. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995).

Petitioner requested a hearing before the Tribunal relative to its assertion that the TCV and TV of its property had been incorrectly assessed. It was provided notice of and actively participated in the hearing. Importantly, the issue before the Tribunal is and always was, the correct TCV and TV of petitioner's property. The Tribunal looked at the testimony and evidence and noted that for its independent de novo determination of the TCV and TV of the property, accurate information, including that of omitted property, must be used. As further discussed below, the Tribunal was not limited to whether the assessment was too high, as alleged by petitioner. Rather, the Tribunal was charged with making a finding of the property's TCV and TV and it did not, in determining from the evidence that property was omitted, place any more at issue.

Petitioner does not dispute that the Tribunal has jurisdiction over the proceeding for direct review of the finding relating to the assessments levied on its property under the property tax laws. Based on MCL 205.732, the Tax Tribunal has the broad authority to modify the finding, order the payment of taxes in matter over which it acquires jurisdiction **and** grant other relief that it deems necessary or appropriate in the disposition of matter over which it may acquire jurisdiction. As noted in *Consumers Power Co v Big Prairie Tp, Newaygo Co*, 81 Mich App 120, 156; 265 NW2d 182 (1978), distinguished on other grounds by *Co of Wayne v*

*Michigan State Tax Com'n*, 261 Mich App 174, 210; 682 NW2d 100 (2004), the inclusion of the language allowing the Tribunal to order the payment of taxes in MCL 205.732(b) expressly indicates the Legislature's intention to permit the Tribunal to *increase* assessments. The *Consumers Power Co* Court stated, at 81 Mich App at 159–60:

> [F]rom a statutory and strictly legal point of view, the potential for a finding of under-assessment came into being the instant Consumers took its s 152 appeal to the Tax Tribunal. From that moment on, the Tax Tribunal had the jurisdiction and power to increase the contested assessment even if no one had appeared in opposition. Under s 37(1), MCLA s 205.737; MSA s 7.650(37), the Tax Tribunal is mandated to find "true cash value". To us, this means full cash value, as determined by whichever of the five methods of valuation heretofore discussed, is most appropriate. Since this Court cannot assume that the Tax Tribunal would not have followed the statutory mandate . . . we find no prejudice to plaintiff. [internal citation omitted]

In addition, petitioner could and did move for reconsideration of the Tribunal's final opinion and order that incorporated the omitted property within it. The opportunity afforded to petitioner to move for reconsideration and rehearing and the record evidence that the Tribunal considered the issues raised by petitioner in its motion demonstrates that due process safeguards were satisfied. See, e.g., *Great Lakes Div of Nat Steel Corp*, 227 Mich App at 406; *Georgetown Place Co-op v City of Taylor*, 226 Mich App 33, 52–53; 572 NW2d 232 (1997).

Petitioner next avers that respondent never asserted there was omitted real property and thus never attempted to prove that 130.52 acres was omitted from the property record card. Petitioner extends this argument to conclude that the Tribunal erroneously left the burden of proof on this issue with petitioner and further argues that there was, in fact, no evidence to show that the 130.52 acres had been omitted from the assessment. Again, we disagree.

With respect to general valuation principles in the Tax Tribunal, the petitioner has the burden to establish the true cash value of property. MCL 205.737(3). The burden of proof encompasses two concepts: "(1) the burden of persuasion, which does not shift during the course of the hearing; and (2) the burden of going forward with the evidence, which may shift to the opposing party." *Jones & Laughlin Steel Corp v City of Warren*, 193 Mich App 348, 354-355; 483 NW2d 416 (1992). Nevertheless, the Tribunal has a duty to make an independent determination of true cash value. *Great Lakes Div of Nat'l Steel Corp*, 227 Mich App at 409. "Thus, even when a petitioner fails to prove by the greater weight of the evidence that the challenged assessment is wrong, the Tax Tribunal may not automatically accept the valuation on the tax rolls." *President Inn Properties, LLC v City of Grand Rapids*, 291 Mich App 625, 631; 806 NW2d 342 (2011). No matter what method of valuation employed, the Tribunal has the overall duty to determine the most accurate valuation under the individual circumstances of the case. *Id*.

The Tribunal did state that "petitioner failed to prove the true cash value of the subject property should be reduced." That, however, is not the same as holding petitioner to the burden of proving that there was no omitted property. A review of the Tribunal's opinion, as a whole, demonstrates that the Tribunal recognized that petitioner bore the burden of establishing only

that the TCV should be lowered — not that it shouldered any other burdens. The Tribunal specifically stated that it found that "Petitioner's appraisal was given no credibility, which leaves the tribunal with the property records, vacant land sales, and the mortgage. Respondent testified to the property records with the only noticeable error, the lack of assessing 130.52 acres of the entire 142.36 acres." It did not, then, put any burden of proof on petitioner beyond its burden to establish that the TCV of the property should be lowered.

MCL 211.34d(1)(b)(i) provides that "[o]mitted real property shall not increase taxable value as an addition unless the assessing jurisdiction has a property record card or other documentation showing that the omitted real property was not previously included in the assessment. The assessing jurisdiction has the burden of proof in establishing whether the omitted real property is included in the assessment." While petitioner is correct that respondent did not affirmatively state that it was attempting to establish that omitted real property was not included in the prior assessment, it did, in fact, do so.

When asked about the land value of the property, respondent's assessor, Dwayne McLachlan, testified that he obtained the figures for the golf course from the Marshall Swift manual and:

> Well, the land value, as expressed by this valuation summary, is captured at the bottom of the page there, it shows 11.84 acres, and that value is for the primary activity center on the – on the subject property. There's about 11 and a half acres, almost 12 acres there where the buildings are located. And that incorporates that land calculation. The balance of the land is the golf course is valued with the golf course on a per hole basis.

When questioned by the Tribunal, he further testified:

> Well, it's – it's a little bit disguised in the sense that the land value for the golf course was embedded with the cost per hole.

McLachlan further testified that he did not believe that the Marshall Swift manual included the actual underlying land but that is what the record reflected for the tax years at issue so he had to "live with that," but they have since changed the process for valuation to correct the error. The record cards for the property for the years at issue show a land estimate for "11.84 total acres."

The assessor was undoubtedly aware of the existence of the golf course and, indeed calculated the value of the course itself on a per hole basis for the years at issue. However, in doing so, he apparently believed that the cost per hole included the value of the land underlying the golf course. Referring to the Assessor's Manual, McLachlan testified that this belief was in error. This is apparent, given the record card reference to a land estimate for 11.84 total acres, while giving a separate estimate for the golf course. The Tribunal referred, in its opinion, to both the STC "Guide to Basic Assessing" and the STC "Cost Manual" to determine that the first step of a cost approach is to estimate vacant land value, then add the "characteristics" of a golf course on the land which are included in the cost per hole.

MCL 211.34d(1)(b)(i) defines "omitted real property" very simply as "previously existing tangible real property not included in the assessment." Respondent offered, as part of its

evaluation summary, before and after assessment cards to meet its statutory burden of proof. There was thus evidence that the land under the golf course was omitted property.

Although petitioner alleges that the Tribunal "replaced" McLachlan's testimony with its own, the record establishes that the Tribunal asked questions of the assessor that clarified the information on the property record cards and led him to further explain whether the golf course valuation he performed complied with learned treatises. The assessor testified that the manual relied upon for valuing the golf course for the 2013 and 2014 taxes was mistakenly believed to include the land value for the golf course in the cost per hole value.

Petitioner also challenges the material relied upon by the Tribunal in reaching its determination of omitted property, asserting that these materials were not admitted into evidence and were not disclosed to the parties until after the Tribunal required the parties to rest their cases. However, there is no constitutional right to discovery in any judicial or quasi-judicial proceeding, including an administrative proceeding. *Henderson*, 307 Mich App at 9. And, petitioner has not argued or established that the STC "Guide to Basic Assessing" and the STC "Cost Manual" are not relied upon in the industry or are unreliable. Assessing officers, in preparing annual assessments, "shall use only the official assessor's manual or any manual approved by the state tax commission, consistent with the official assessor's manual, with their latest supplements, as prepared or approved by the state tax commission as a guide in preparing assessments." MCL 211.10e; *President Inn Properties, LLC*, 291 Mich App at 637. The Tribunal, then, could clearly rely on manuals prepared by the STC.

Moreover, the Tribunal is "under a duty to apply its expertise to the facts of a case and is not bound by either party's theories of valuation." *President Inn Properties, LLC*, 291 Mich App at 634. In *Great Lakes Div of Nat Steel Corp*, 227 Mich App at 402, a panel of this Court found that the Tribunal's consideration of a graphic analysis did not require reversal because it was "not evidence, but merely reflected an analysis performed by the Tax Tribunal on evidence that was explained, but was not incorporated into the Tax Tribunal's written opinion." The panel also noted, in passing, that respondent "had the opportunity to request the graphic analysis when moving for a rehearing, but did not do so." The same holds true here.

Petitioner's second primary argument on appeal challenges the TCV figure assigned to the property by the Tribunal based upon its assertions that the Tribunal erroneously accepted respondent's cost approach of valuation despite the fact that the valuation was rife with errors, and that the Tribunal's figure did not represent an independent determination of TCV and was not supported by substantial evidence on the record. We disagree with all claims of alleged error.

"The Tax Tribunal is under a duty to apply its expertise to the facts of a case in order to determine the appropriate method of arriving at the true cash value of property, utilizing an approach that provides the most accurate valuation under the circumstances." *Great Lakes Div of Nat Steel Corp*, 227 Mich App at 389–90. "True cash value" is defined, in relevant part, as "the usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale. . ." True cash value is synonymous with fair market value. *Id*. at 390.

Proceedings before the Tax Tribunal are original and independent and the Tribunal thus has a duty to make its own, independent determination of true cash value. *Jones & Laughlin Steel Corp*, 193 Mich App at 356. "[T]he determination of true cash value is not an exact science and ... often involves a reconciliation of various approaches." *Great Lakes Div of Nat Steel Corp*, 227 Mich App at 398. It further frequently "involves a considerable amount of judgment and reasonable approximation," and "there is no rule of law that requires the Tax Tribunal to quantify every possible factor affecting value." *Id.* at 398–399. To assist in this daunting task, the Legislature has provided the following nonexhaustive list of factors that should be considered in determining a property's true cash value:

> [T]he advantages and disadvantages of location; quality of soil; zoning; existing use; present economic income of structures, including farm structures; present economic income of land if the land is being farmed or otherwise put to income producing use; quantity and value of standing timber; water power and privileges; minerals, quarries, or other valuable deposits not otherwise exempt under this act known to be available in the land and their value. [*Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 696; 840 NW2d 168 (2013), quoting MCL 211.27(1).]

The three most common approaches for determining true cash value are the capitalization-of-income approach, the sales-comparison or market approach, and the cost-less-depreciation approach. *Jones & Laughlin Steel Corp*, 193 Mich App at 353. "It is the duty of the Tax Tribunal to select the approach which provides the most accurate valuation under the circumstances of the individual case." *Detroit Lions, Inc v City of Dearborn*, 302 Mich App 676, 700; 840 NW2d 168 (2013). The tribunal is not bound to accept either party's theories of valuation; it may accept one theory and reject the other, reject both theories, or use a combination of both in arriving at its determination of true cash value. *Great Lakes Division of Nat'l Steel Corp*, 227 Mich App at 389-390.

In the case at bar, the Tribunal determined that a cost-less-depreciation approach provided the most accurate value of the property. This determination did not constitute an error of law and it was supported by substantial evidence. Const. 1963, art. 6, § 28.

The Tribunal thoroughly reviewed the income and sales comparison approaches undertaken by petitioner's expert, Michael Rende. With respect to the sales comparison approach, the Tribunal noted that serious limitations were noted for the subject property due to the inadequate number of "comparable" sales and that the approach lacked specificity due to a lack of sales during the appropriate time period. With respect to the income approach, the Tribunal found that petitioner's approach included mathematical errors, that the selection of expenses was excessive for all three profit centers, and that the land value was below market value. Notably, Rende testified that he did not use a cost approach because quantifying losses attributable to depreciation are extremely subjective and quantifying the contributing value of the underlying land is difficult — not that it was unreliable or inappropriate.

The Tribunal also thoroughly reviewed the mass assessment cost approach undertaken by respondent's assessor as well as the sales of vacant land that the assessor utilized. It noted that the cost approach serves as a reference point for an older multi-use property and that the property

records were included as part of the valuation disclosure, although 130.52 acres of land was omitted from the approach.

It is well settled that the cost-less-depreciation method is particularly appropriate for valuing special-purpose properties with a limited or inadequate market. *Detroit Lions, Inc*, 302 Mich App at 700. Both petitioner's expert and the assessor testified to the difficulty in finding any comparable property. The existing use as a multi-use facility was "grandfathered" in and the location of the property is in an industrial area. The Tribunal took note of past and existing economic conditions and the lack of industrial land sales to conclude that the highest and best use of the property for the tax years at issue was an interim continued use. It also considered how to value the vacant land, finding petitioner's expert's valuation not credible, and then taking into account the $5 million mortgage executed on the property in 2013 (which included an appraisal of the property for $7.8 million), and the property record cards.

With respect to the specific figure used to calculate the value of the omitted land, McLachlan testified that in valuing the property at issue, he looked at 5 recent sales that were 30 acres or more and sold before the final tax date applicable to the property at issue. The average price per acre of only those properties was $22,637. This is the approximate figure used by the Tribunal (it actually used $22,478 per acre) in valuing the omitted land. There was thus a reasonable basis and credible evidence for the Tribunal's TCV assessment, and its independent determination of TCV was supported by substantial evidence in the record.

Petitioner's next argument on appeal is that the Tribunal erred by "spreading" taxes based on a finding of omitted real property to a period prior to the last change of ownership in violation of MCL 211.154 and 211.34d. Where, as here, a petitioner did not raise an issue before the Tax Tribunal, the issue is not properly preserved and this Court need not address it. *Toaz v Dep't of Treasury*, 280 Mich App 457, 463; 760 NW2d 325 (2008). Nevertheless, the issue is briefly addressed below.

Petitioner's reliance on MCL 211.154 to argue against the Tax Tribunal's spreading of taxes against the property because the property changed ownership a short time before the Tribunal issued its final opinion is without merit. MCL 211.154 simply does not apply to the Tax Tribunal. As fully explained when addressing petitioner's first argument on appeal, it applies to the state tax commission.

MCL 211.154(1) states that:

> If the *state tax commission* determines that property subject to the collection of taxes under this act. . . has been incorrectly reported or omitted for any previous year, but not to exceed the current assessment year and 2 years immediately preceding the date the incorrect reporting or omission was discovered and disclosed to the state tax commission, the state tax commission shall place the corrected assessment value for the appropriate years on the appropriate assessment roll. . . . *Taxes computed under this section* shall not be spread against the property for a period before the last change of ownership of the property. [emphasis added]

The *state tax commission* did not determine that petitioner's property was incorrectly reported or omitted for any previous year. And, there were no taxes computed *under that section* (MCL 211.154(1).

It is true that in adding omitted property, the Tribunal looks to MCL 211.34d(1)(b)(i). The section states that "[o]mitted real property for the current and the 2 immediately preceding years, discovered after the assessment roll has been completed, shall be added to the tax roll pursuant to the procedures established in [MCL 211.154]." However, the *procedures* for adding the omitted real property to the tax roll are that the STC is to "issue an order certifying to the treasurer of the local tax collecting unit if the local tax collecting unit has possession of a tax roll for a year for which an assessment change is made or the county treasurer if the county has possession of a tax roll for a year for which an assessment change is made the amount of taxes due as computed by the correct annual rate of taxation for each year except the current year." Thus, while the Tribunal is to follow the procedure for adding omitted taxes to the tax roll, the taxes were not computed under MCL 211.154 but rather by the Tribunal while undertaking its independent determination of the property's proper TCV and TV.

Lastly, petitioner argues that the Tribunal erred by increasing the TV by more than the amount permitted under MCL 211.27a and the Michigan Constitution. Because this issue was not preserved, plain-error analysis is appropriate. *Carines*, 460 Mich at 764–765.

MCL 211.27a provides, in relevant part:

(1) Except as otherwise provided in this section, property shall be assessed at 50% of its true cash value under section 3 of article IX of the state constitution of 1963.

(2) Except as otherwise provided in subsection (3), for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:

(a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.

(b) The property's current state equalized valuation.

Under MCL 211.27a(2), the current year's taxable value is directly predicated on the immediately preceding year's taxable value unless the current state equalized valuation is lower. *Michigan Properties, LLC*, 491 Mich at 531. Specifically, under (2), taxable value may only be increased by five percent of the previous year's taxable value or the inflation rate, plus "all additions" or the property's current state equalized value, whichever is less.

In *Superior Hotels, LLC v Mackinaw Twp*, 282 Mich App 621, 634–35; 765 NW2d 31 (2009), this Court succinctly explained Const. 1963, art. 9, § 3 as follows:

In 1994, Michigan voters approved Proposal A, "which amended article 9, § 3 of the Michigan Constitution." *Toll Northville LTD v Northville Twp*, 480

-11-

Mich. 6, 11, 743 N.W.2d 902 (2008). As amended, Const. 1963, art. 9, § 3, provides, in part:

The legislature shall provide for the uniform general ad valorem taxation of real and tangible personal property not exempt by law except for taxes levied for school operating purposes. The legislature shall provide for the determination of true cash value of such property; the proportion of true cash value at which such property shall be uniformly assessed, which shall not, after January 1, 1966, exceed 50 percent; and for a system of equalization of assessments. For taxes levied in 1995 and each year thereafter, the legislature shall provide that the taxable value of each parcel of property adjusted for additions and losses, shall not increase each year by more than the increase in the immediately preceding year in the general price level, as defined in section 33 of this article, or 5 percent, whichever is less until ownership of the parcel of property is transferred. When ownership of the parcel of property is transferred as defined by law, the parcel shall be assessed at the applicable proportion of current true cash value.

The purpose of Proposal A, as explained by our Supreme Court, was

"to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount that the 'taxable value' of the property may increase each year, even if the 'true cash value,' that is, the actual market value, of the property rises at a greater rate. However, a qualification is made to allow adjustments for 'additions.' " [citation omitted]

Our Supreme Court, in *WPW Acquisition Co v City of Troy*, 466 Mich 117, 121–22; 643 NW2d 564 (2002) stated, in interpreting the same constitutional provision:

As is plain, this language operates to generally limit increases in property taxes on a parcel of property, as long as it remains owned by the same party, by capping the amount that the "taxable value" of the property may increase each year, even if the "true cash value," that is, the actual market value, of the property rises at a greater rate. However, a qualification is made to allow adjustments for "additions."

"Additions", then are not subject to the general limit on annual property tax increases imposed by § 3. Because the land added by the Tribunal qualified as "omitted real property" under MCL 211.34d(1)(b)(i), it was an "addition," which, pursuant to MCL 211.27a(2)(a), allowed the property's 2013 and 2014 taxable value to be increased by an amount exceeding the statutory limit.

To the extent that Petitioner appears to contend that the "current" state equalized valuations that should be used for purposes of MCL 211.27a(2)(b) are those that were utilized by respondent in its prior calculations, this contention is without merit. The Tribunal determined that the state equalized value, as previously stated, was incorrect, due to omitted property.

There was no error in this finding. Petitioner has provided no authority suggesting that an incorrect state-equalized value, even after noted and corrected, should be construed as a "current" state-equalized value for purposes of calculating taxable value.

Affirmed.

/s/ Deborah A. Servitto
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens