*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AARON G. PERGAMENT,

      Petitioner-Appellant,

v

CITY OF OAK PARK,

      Respondent-Appellee.

UNPUBLISHED
September 12, 2019

No. 344250
Tax Tribunal
LC No. 17-003805

Before: MURRAY, C.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Petitioner appeals as of right a final opinion and judgment issued by the Michigan Tax Tribunal, upholding the 2017 assessment of his property by respondent. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner purchased the subject property at 25500 Colleen Street in Oak Park on April 10, 2014, for $95,000. Petitioner demolished the existing home on the property in 2015, and replaced it with a newly-constructed home completed in 2016. The permit fee for the demolition was $7,500, and the cost of the new construction was $244,150. The newly-constructed home is 3,192 square feet with three bedrooms and 3 ½ bathrooms.

In 2016, after demolition of the existing home, the taxable value assessed for the property was $11,210. After completion of the newly-constructed home, respondent assessed the property for the 2017 tax year as follows:

True Cash Value: $326,600

State Equalized Value: $163,300

Taxable Value: $152,010

Petitioner challenged the assessment at respondent's March 2017 Board of Review, but the Board upheld the assessment. Acting *in propria persona*, petitioner then appealed the Board's

decision to the Tax Tribunal, arguing that the fair market and taxable values of the property should have been $240,000 and $106,000, respectively. Petitioner submitted to the tribunal spreadsheets and other documents comparing his home to other allegedly similar properties nearby.

Respondent supported its assessment with both market and cost-approach analyses. According to respondent:

> Due to lack of income data, the sales comparison approach and cost approach were utilized to determine the true cash value for 2017. By using a simple cost approach the value for 2017 would equate to $346,650 derived from adding the cost of the lot $95,000 plus the demolition cost of $7,500 plus new construction cost of $244,150. The city valued the parcel at $326,600 in 2017 with an assessed value of [$]163,300 and a taxable value of [$]152,010.

Respondent explained that it determined these final numbers based on a comparison of the subject property with four other properties adjusted for size.

The tribunal held a hearing following which it issued a final opinion and judgment upholding respondent's 2017 assessment of petitioner's property. In so doing, the tribunal acknowledged the mandate that it make an independent determination of the property's true cash value. The tribunal rejected petitioner's sales-comparison approach to determining value because he failed to consider or adjust for the individual features of the subject and comparison properties and accepted respondent's sales-comparison data as relevant to the determination of the property's market value, noting that "[a]ll of Respondent's comparables were two story construction like the subject and new or remodeled in the 2000s." The tribunal ultimately adopted respondent's entire assessment, stating:

> Respondent concluded to a value of $326,600 for 2017 and $351,200 for 2018 using the mass appraisal cost approach to value. The cost approach is based on the understanding that market participants relate value to cost. In this approach, the value of the property is derived by adding the estimated value of the land to the current cost of construction. This approach is particularly useful in valuing new or nearly new improvements. Here, the subject is new and Respondent used a land table to establish land value at $30,200. While the cost approach is an attempt to stimulate market activity, there are also the actual costs of construction as reported by the Petitioner, in addition to data from the land transaction which add up to a value of $346,650 for 2017. All Respondent's data support its contention of value at $326,600 for 2017 and $351,200 for 2018.

Petitioner moved for reconsideration of the tribunal's decision, arguing that the 2017 taxable value of his property, under the cost approach plus construction costs, should have been between $118,267 and $127,676. Petitioner derived the $127,676 taxable value by adding the property's 2016 taxable value of $11,210 to the $244,150 cost of construction, and dividing the sum in half; he derived the $118,267 taxable value by comparing his property to the build cost and taxable value of another newly-constructed home in Oak Park. The tribunal denied the motion and this appeal followed.

## II. ANALYSIS

> This Court's ability to review decisions of the Tax Tribunal is very limited. Michigan's Constitution provides: "In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation." Const 1963, art 6, §28. Thus, this Court's review of decisions of the Tax Tribunal, in the absence of fraud, is limited to determining whether the tribunal made an error of law or adopted a wrong principle; the factual findings of the tribunal are final, provided they are supported by competent and substantial evidence. [*President Inn Props, LLC v Grand Rapids*, 291 Mich App 625, 630-631; 806 NW2d 342 (2011) (selected internal citations and quotation marks omitted).]

"Substantial evidence must be more than a scintilla of evidence, although it may be substantially less than a preponderance of the evidence." *Forest Hills Coop v Ann Arbor*, 305 Mich App 572, 588; 854 NW2d 172 (2014) (internal citations, block notation, and quotation marks omitted). "This Court has stated that competent and substantial evidence will support the Tax Tribunal's decision if the decision is within the range of valuations in evidence." *Id*.

We affirm the Tax Tribunal's final opinion and judgment, as it did not commit an error of law or adopt a wrong principle when upholding respondent's 2017 assessment of petitioner's property.

Although the petition and evidence filed with the tribunal, as well as the tribunal's final opinion and judgment, focused largely on the calculation of the subject property's true cash value, on appeal, petitioner focuses on respondent's calculation of the property's 2017 taxable value. MCL 211.27a(2) provides:

> Except as otherwise provided in subsection (3),[1] for taxes levied in 1995 and for each year after 1995, the taxable value of each parcel of property is the lesser of the following:
>
> (a) The property's taxable value in the immediately preceding year minus any losses, multiplied by the lesser of 1.05 or the inflation rate, plus all additions. For taxes levied in 1995, the property's taxable value in the immediately preceding year is the property's state equalized valuation in 1994.
>
> (b) The property's current state equalized valuation.

---

[1] MCL 211.27a(3) provides: "Upon a transfer of ownership of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer."

Additions include "new construction," defined as "property not in existence on the immediately preceding tax day and not replacement construction." MCL 211.34d(1)(b)(*iii*). "For purposes of determining the taxable value of property under section 27a, the value of new construction is the true cash value of the new construction multiplied by 0.50." MCL 211.34d(1)(b)(*iii*). Thus, the taxable value of newly-constructed property is determined using the lesser of the previous year's taxable value "multiplied by the lesser of 1.05 or the inflation rate, plus the true cash value of the new construction multiplied [by] 0.50." *Superior Hotels, LLC, v Mackinaw Twp*, 282 Mich App 621, 638; 765 NW2d 31 (2009) (internal citation and quotation marks omitted; alteration in original).

Petitioner asserts that, "since [respondent] had established the taxable value of his property with partial improvements on it in 2016 with a final taxable value of $11,210 and a build cost of $244,150," the 2017 taxable value of his property should have been $127,680 based on the following calculation: "($244,150 build cost + $11,210 Final Taxable value land cost with improvements as established by [respondent] in 2016 multiplied by the CPI factor of 1.009 to give the land cost to be $11,311) = $255,461 divided by 2 = $127,730 and not $155,200." Petitioner, however, provides no authority for the proposition that the true cash value of new construction equates to the build cost,[2] and substantial evidence supports the tribunal's affirmance of respondent's 2017 true cash value determination for the subject property.

"True cash value" is the "usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price that could be obtained for the property at private sale . . . ." MCL 211.27(1). Thus, contrary to petitioner's argument, true cash value is synonymous with fair market value, *President Inn Props, LLC*, 291 Mich App at 637, and not simply the cost of construction or build cost, as petitioner appears to assert.

"In a property tax dispute, the petitioner must prove by the greater weight of the evidence that the disputed assessment was too high on the basis of the Tax Tribunal's findings of true cash value." *Forest Hills Coop*, 305 Mich App at 588. However, the tribunal must make an independent determination of true cash value. *President Inn Props, LLC*, 291 Mich App at 631. Accordingly, "the Tax Tribunal has the overall duty to determine the most accurate valuation under the individual circumstances of the case." *Id*. The tribunal did so here.

Although the Legislature has failed to specify the methods of evaluation assessors should employ, *id*. at 637, "[c]ourts have generally recognized that the three most common approaches to valuation are the capitalization-of-income approach, the sales-comparison or market approach, and the cost-less-depreciation approach," *id*. at 639 (internal citation and quotation marks omitted). Again, "[r]egardless of which approach is used, the value determined by the Tax Tribunal must be the usual price for which the property would sell." *Great Lakes Div of Nat'l Steel Corp v Ecorse*, 227 Mich App 379, 390; 576 NW2d 667 (1998). Here, the tribunal adopted the assessment respondent computed through utilization of the cost-less-depreciation approach,

---

[2] The record also lacks any evidence to support petitioner's assertion that the foundation and framing for his home were complete before respondent assessed the property for the 2016 tax year.

and substantial evidence supported the tribunal's use of that approach, as well as its ultimate assessment.

Under the cost-less-depreciation approach—"which generally considers the land to be unimproved, requires the development of a replacement cost for improvements, and makes adjustments for depreciation," *Forest Hills Coop*, 305 Mich App at 590—respondent added together the $95,000 cost of the property's lot, the $7,500 demolition cost, and the $244,150 cost of the newly-constructed home, to arrive at a fair market value for the property of $346,650.[3] It then compared that value to four properties of similar style, size, and school district, adjusting for size differences, to assess a true cash value of $326,600 for the property in 2017. The tribunal considered the comparisons relevant based on its review of the evidence submitted by respondent in support, and found respondent's cost-plus-depreciation approach appropriate to value petitioner's newly-constructed home.

From the above, we see no error of law or adoption of wrong principles which would justify reversal. The tribunal made its own independent determination of the property's true cash value on the basis of substantial evidence submitted by respondent and did so utilizing a valuation method tailored to valuing property with new construction. The tribunal properly rejected petitioner's sales-comparison evidence due to petitioner's failure to adjust for the individual features of the proffered comparable properties. Accordingly, substantial evidence supported the tribunal's findings and petitioner's argument to the contrary is without merit.

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

[3] To arrive at these figures, the tribunal considered the warranty deed for the property, as well as building permits submitted as evidence by respondent.